2010 UT App 188

**Irving S. BRAUN, individually and on behalf of all others similarly situated, Plaintiff and Appellant,**

v.

**NEVADA CHEMICALS, INC.; E. Bryan Bagley; Nathan L. Wade; John T. Day; James E. Solomon; M. Garfield Cook; Nevada Chemicals, Inc.; Oaktree Capital Management, LP; Calypso Acquisition Corp.; Cyanco Holding Corp.; and OCM Principal Opportunities Fund IV, LP, Defendants and Appellees.**

No. 20090493–CA.

Court of Appeals of Utah.

July 9, 2010.

Jon V. Harper and Heather M. Sneddon, Salt Lake City, for Appellant.

Robert S. Clark, Stephen E. Hale, Jenifer L. Tomchak, Mark F. James, and Phillip J. Russell, Salt Lake City, for Appellees.

Before Judges THORNE, VOROS, and ROTH.

## OPINION

VOROS, Judge:

¶ 1 Plaintiff Irving S. Braun owned two hundred shares of the more than seven million outstanding shares of Defendant Nevada Chemicals, Inc. He challenged the sale of Nevada Chemicals to Defendants Oaktree Capital Management, LP; Calypso Acquisition Corp.; Cyanco Holding Corp.; and OCM Principal Opportunities Fund IV, LP ("the Buyout Group"). Plaintiff initially brought a direct class action against the Buyout Group, Nevada Chemicals, and individual directors of Nevada Chemicals (collectively, Defendants) but later amended his complaint, changing it to a derivative action. In both actions, he claimed that Defendants "breached their fiduciary duties and negotiated the merger for inadequate consideration due to their own self-interests." The trial court dismissed Plaintiff's action for lack of standing. We affirm.

## BACKGROUND

¶ 2 On September 5, 2008, Nevada Chemicals announced it had signed an agreement to be acquired by the Buyout Group via a tender offer for $13.37 per share. Before the deadline for Nevada Chemicals to file their required disclosures with the Securities and Exchange Commission, Plaintiff filed a direct class action suit alleging that Defendants had breached their fiduciary duties by failing to negotiate an adequate purchase price and by failing to disclose material information about the transaction. Defendants moved to dismiss Plaintiff's complaint, arguing that Plaintiff was required to bring his claim in a shareholder derivative action rather than as a direct claim. Defendants also alleged that Plaintiff had failed to satisfy the conditions precedent for asserting a shareholder derivative action. Plaintiff countered that his claim was properly pleaded as a direct class action claim but that if he needed to bring a shareholder derivative action, he had standing to do so. Plaintiff attached to his response a proposed Verified Amended Derivative Complaint for Breach of Fiduciary Duty. He also moved for a preliminary injunction to halt the acquisition.

¶ 3 On October 15, 2008, the trial court held a hearing on Defendants' motion to dismiss and Plaintiff's motion for a preliminary injunction (the October 15 hearing). At the hearing, the trial judge indicated that she thought the action should probably be derivative rather than direct, but she invited argument on the question. Defendants agreed to Plaintiff's amending his complaint so long as he did not contest their motion to dismiss. But if he opposed their motion to dismiss and lost, they reserved the right to argue that the dismissal should be with prejudice and to oppose his motion to amend. Faced with this choice, Plaintiff agreed to withdraw his direct claim and amend his complaint to state a derivative claim. He also withdrew his motion for a preliminary injunction. Defendants' motion to dismiss was accordingly rendered moot.

¶ 4 No preliminary injunction having been entered, the tender offer was completed and, seven days after the hearing, the Buyout Group acquired the tendered shares. That

same day, Plaintiff filed his Verified Amended Derivative Complaint for Breach of Fiduciary Duty. The next day, October 23, 2008, the trial court entered an order memorializing the October 15 hearing (the October 23 Order). That order recited that Plaintiff had formally withdrawn his motion for a preliminary injunction and ordered him to file an amended derivative complaint no later than October 22, 2008, which Plaintiff had in fact done the previous day.

¶ 5 Defendants moved to dismiss Plaintiff's amended derivative complaint on the ground that he lacked standing. He lacked standing, Defendants argued, because as a result of the completed acquisition he was no longer a shareholder in Nevada Chemicals. Plaintiff responded that he did have standing and that it would be unfair to extinguish his right to bring a derivative claim. On May 11, 2009, the trial court granted Defendants' motion to dismiss (May 11 Order). The court ruled that "Plaintiff lacks standing to bring a derivative action inasmuch as he is no longer a shareholder of Nevada Chemicals, Inc., and therefore does not fairly and adequately represent the interests of the shareholders." The trial court also observed that "Plaintiff's remedy for the claims alleged in the Amended Derivative Complaint is to exercise his statutory right to an appraisal of his shares" as provided by Utah Code section 16–10a–1302, see Utah Code Ann. § 16–10a–1302 (2009). Plaintiff appeals from this order.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Plaintiff first contends that the trial court erred in ruling that his claim was derivative rather than direct. Because the trial court never ruled one way or the other on this point, we have no order to review. Plaintiff next contends that the trial court erred in stating that Plaintiff's sole remedy was appraisal of his shares under Utah Code section 16–10a–1302. However, Plaintiff concedes that this ruling was unnecessary once

the trial court determined that he lacked standing to bring a derivative action. The ruling was therefore advisory only, and for that reason, we do not review it. See Summit Water Distrib. Co. v. Summit County, 2005 UT 73, ¶ 50, 123 P.3d 437 ("Our settled policy is to avoid giving advisory opinions in regard to issues unnecessary to the resolution of the claims before us."). Finally, Plaintiff does not challenge the trial court's ruling that he lacked standing to bring a derivative claim.

## ANALYSIS

¶ 7 At the outset, Defendants contend that Plaintiff's appeal suffers from two procedural flaws. First, they argue that Plaintiff's claim is not properly before this court because he "is not challenging the order from which he is appealing," namely, the trial court's May 11 Order dismissing Plaintiff's derivative action for lack of standing. Second, they argue that Plaintiff cannot challenge the trial court's dismissal of his direct claim because the court did not dismiss that claim; rather, they contend, Plaintiff voluntarily withdrew it.

¶ 8 In support of their first argument, Defendants cite no authority. Nevertheless, our cases have long held that a party may not appeal from a judgment in his or her favor. See, e.g., Klinge v. Southern Pac. Co., 89 Utah 284, 57 P.2d 367, 376 (1936). So if Plaintiff indeed had no quarrel with the trial court's final order of dismissal—if Plaintiff was content to have his complaint dismissed and simply challenged the ground on which it was dismissed-this appeal might not be properly before us. But that is not the situation.

■ ¶ 9 Plaintiff appeals from a final order dismissing his derivative claim on the ground that he lacks standing to assert it. He lacks standing, the trial court reasoned, because as a result of the completed acquisition, he was no longer a shareholder of the company.[1]

---

1. Cases construing the federal counterpart to our rule hold that derivative claims may be brought only by those who are shareholders at the time suit is filed. Rule 23A of the Utah Rules of Civil Procedure, which governs derivative actions by shareholders, is "virtually identical" to rule 23.1 of the Federal Rules of Civil Procedure. *Angel*

Investors, LLC v. Garrity, 2009 UT 40, ¶ 25, 216 P.3d 944. "In construing our rule, we freely refer to authorities which have interpreted the federal rule." *Gold Standard v. American Barrick Res. Corp.*, 805 P.2d 164, 168 (Utah 1990). Under federal rule 23.1, a shareholder is required to hold shares "at the time the suit is

Typically, a party appealing from such an order would contend that he does have standing to bring the derivative claim. Plaintiff does not. His opening brief states, "Although he believes it was erroneous, to streamline the issues on appeal [P]laintiff does not challenge the trial court's ruling that completion of a merger eliminates derivative standing." But, he continues, *"reversal is required* because the case [P]laintiff brought is direct, not derivative." (Emphasis added). Plaintiff thus contends that the trial court erred by dismissing his complaint. However, he argues that the dismissal was error not because the trial court erroneously ruled that he lacked standing to bring a derivative suit—he is willing to concede this point for purposes of appeal—but because the trial court erroneously ruled that his claim was derivative. By appealing the trial court's final order, Plaintiff contends, he is entitled to challenge any intermediate ruling that led the court to its final (in his view) erroneous decision. We agree.

¶ 10 A party appealing from a final order may challenge any intermediate order of the court. *See Zions First Nat'l Bank, N.A. v. Rocky Mountain Irrigation, Inc.*, 931 P.2d 142, 144 (Utah 1997) (allowing an appellant to appeal the final judgment and any "intermediate orders or events," even where the intermediate orders or events were not specifically named in the notice of appeal); *Davis v. Goldsworthy*, 2008 UT App 145, ¶ 8 n. 2, 184 P.3d 626 (mem.) (same); *see also Librizzi v. Children's Mem'l Med. Ctr.*, 134 F.3d 1302, 1306 (7th Cir.1998) (holding that appealing from a final judgment "always covers the waterfront" and puts "the whole case ... properly before [the court] for decision"). Here, Plaintiff is challenging the dismissal of his complaint, which is a final order. He is therefore entitled to challenge an intermediate order of the court that constitutes one link in the chain of rulings leading to dismissal.

¶ 11 Defendants' second argument is that the intermediate link at issue here was not

an order of the trial court at all, but Plaintiff's own choice to stipulate to amending his complaint from one alleging a direct claim to one alleging a derivative claim. The trial court never ruled, Defendants assert, that Plaintiff's claim must be brought as a derivative rather than a direct claim; rather, Plaintiff voluntarily withdrew his direct claim as a matter of litigation strategy. Plaintiff maintains that "the trial court erred in holding that plaintiff's claims ... are 'derivative' rather than 'direct' in nature."

¶ 12 At issue is the October 15 hearing. That hearing was originally scheduled as a hearing on Plaintiff's motion for a preliminary injunction and Defendants' motion to dismiss. At the hearing, Plaintiff stated that he did not have all the documents he wanted, and thus did not intend to go forward with the preliminary injunction hearing that day. Defendants agreed to stipulate to an amendment to allow Plaintiff to recast his complaint as a derivative action; otherwise, they asked that the court rule on their motion to dismiss the complaint. And they asked that any dismissal be with prejudice.

¶ 13 The trial judge gave her "take" on the situation. She began by noting that "the Motion to Dismiss is well taken." She stated that she was inclined to believe the claims were derivative: "So if I were to hear argument, and unless someone changed my mind for me this morning, which certainly could happen, I would be inclined to grant the Motion to Dismiss." But she also stressed that she was open to persuasion:

Court: If you want to waive oral argument, I'll rule right now.

[Plaintiff's counsel]: Well, I would appreciate the opportunity to explain quickly why we think that the claims are derived, but if the Court is telling us that there's no way you're going to change your mind, then-

Court: I'm not telling you that. I would never do that.

At that point, rather than risking a dismissal, Plaintiff announced that he would voluntarily

brought." *Schilling v. Belcher,* 582 F.2d 995, 999 (5th Cir.1978) ("Th[is] requirement ... is not expressly stated in [federal rule 23.1], but rather is implied by the statement that an action

under [r]ule 23.1 may be 'brought by one or more shareholders ... to enforce a right of a corporation.'" (second alteration in original) (quoting Fed.R.Civ.P. 23.1)).

abandon his direct claim and file an amended complaint asserting only a derivative claim: "Well, I think ... the tide is rolling against me on this issue. So we would—we'll enter the stipulation to file an amended complaint. We just request some additional time to amend that further ...." The trial court then ruled that "based upon stipulation of counsel, Plaintiff may file an amended complaint as a derivative action." Seven days later, Plaintiff made good on his stipulation, filing an amended complaint that stated only a derivative claim for relief.

¶ 14 On appeal, Plaintiff argues that his decision to withdraw his original complaint and file an amended complaint was done "only when it became futile, in the face of judicial resistance, to push further for the direct action he initially sought to bring." He contends that he thereby "opted to save both the parties and the trial judge time and effort by agreeing to file a new pleading by stipulation." However, by withdrawing his direct complaint in order to avoid the risk of a dismissal with prejudice, Plaintiff failed to obtain a ruling from the trial court that he could challenge on appeal. The judge expressed her preliminary opinion of Defendants' motion to dismiss, but she did not grant or deny the motion. Comments such as those by the trial judge here are useful to guide counsel's argument, are entirely appropriate, and are not appealable. "[T]he law is well settled ... that the statements made by a trial judge are not the judgment of the case and it is only the signed judgment that prevails." *State v. Gerrard,* 584 P.2d 885, 887 (Utah 1978) (where the trial judge's oral ruling differed from the ruling he later signed). Neither the October 23 Order nor the May 11 Order dismissed Plaintiff's direct complaint; Plaintiff withdrew it.

¶ 15 Even if one of those orders could be read in that way, any error was invited. "[A] party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *Pratt v. Nelson,* 2007 UT 41, ¶ 17, 164 P.3d 366. For example, in *State v. Hamilton,* 2003 UT 22, 70 P.3d 111, the defendant argued on appeal that the trial court had "erred by giving a jury instruction that effectively limited the jury's opportunity to consider justification or self-defense." *Id.* ¶ 52. However, the defendant had "approved the instruction before it was given to the jury." *Id.* Accordingly, our supreme court found no error, emphasizing that this outcome was necessary for at least two reasons: "First, it fortifies our long-established policy that the trial court should have the first opportunity to address the claim of error. Second, it discourages parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal." *Id.* ¶ 54 (internal quotation marks omitted). Likewise here, even if the trial court's orders or comments could be read as a dismissal of Plaintiff's direct complaint, any error was invited because Plaintiff stipulated to it.

¶ 16 Plaintiff also argues that the direct/derivative issue is really one of standing and that because standing is jurisdictional, we can always consider it. Plaintiff correctly states that "standing is a jurisdictional requirement," *Brown v. Division of Water Rights,* 2010 UT 14, ¶ 12, 228 P.3d 747, and that "a challenge to standing is jurisdictional and may be brought at any stage of the litigation," including on appeal, *id.* ¶ 15, *see Bradbury v. Valencia,* 2000 UT 50, ¶ 8, 5 P.3d 649 ("[A] lack of jurisdiction can be raised by the court or either party at any time." (internal quotation marks omitted)). But Plaintiff has not presented us with a challenge to standing; indeed, he expressly abandoned any challenge to the trial court's ruling that he lacked standing to assert a derivative action.[2] And, as explained above,

---

2. Plaintiff's reply brief includes one sentence contesting the trial court's ruling that he lacked standing. However, this statement contradicts his opening brief, which states, "Although he believes it was erroneous, to streamline the issues on appeal [P]laintiff does not challenge the trial court's ruling that completion of a merger eliminates derivative standing." An appellant may not raise a new argument in a reply brief.

*See* Utah R.App. P. 24(c) ("Reply briefs shall be limited to answering any new matter set forth in the opposing brief."); *Brown v. Glover,* 2000 UT 89, ¶ 23, 16 P.3d 540 ("[I]ssues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court."). This rule applies with particular force

his challenge to the court's order dismissing his direct claim fails not because he lacks standing but because no such order exists.

¶ 17 Finally, Plaintiff contends that the trial court erred in stating that Plaintiff's sole remedy was appraisal of his shares under Utah Code section 16–10a–1302(5), *see* Utah Code Ann. § 16–10a–1302(5) (2009). The parties agree that this statement was unnecessary once the trial court had determined that Plaintiff lacked standing to bring a derivative claim. We therefore express no opinion on its correctness.

## CONCLUSION

¶ 18 In sum, Plaintiff has not presented us with any appealable issues. He does not challenge the trial court's ruling that he lacked standing to bring a derivative claim. We do not address the question of whether his claim should have been brought as a direct claim or as a derivative claim. Plaintiff took this question away from the trial court by amending his complaint to assert only a derivative claim. Finally, the trial court's assertion that Plaintiff's sole remedy was the appraisal remedy found in Utah Code section 16–10a–1302, *see id.* § 16–10a–1302, was advisory only, and we express no opinion on its correctness.

¶ 19 WE CONCUR: WILLIAM A. THORNE JR. and STEPHEN L. ROTH, Judges.

when the reply brief takes a position opposed to a position taken in the opening brief.